Filed 11/4/22  In re L.S. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re L.S., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D080424 |
| Plaintiff and Respondent, | (Super. Ct. No. J520582C) |
| v. | |
| M.L-G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Conditionally reversed with directions.

Shobita Misra, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Dana Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

M.L.-G. (Mother) appeals from the juvenile court's order terminating her parental rights to her minor daughter at the Welfare and Institutions Code[1] section 366.26 hearing. Mother's sole claim on appeal is ICWA error. She contends the San Diego County Health and Human Services Agency (Agency) and the juvenile court failed to satisfy its initial inquiry duties under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and section 224.2, and thus there is not substantial evidence to support the court's finding that ICWA did not apply. The Agency concedes ICWA error but argues it was harmless. Applying the standard of prejudice adopted in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*), we conclude the Agency's error was prejudicial. We therefore conditionally reverse and remand for the limited purpose of ensuring compliance with ICWA and section 224.2.

## FACTUAL AND PROCEDURAL BACKGROUND

L.S. was born with morphine in her system and suffered severe withdrawal symptoms after birth. Mother admitted to abusing drugs during her pregnancy, including daily heroin use, regular methamphetamine and fentanyl use; she tested positive for all three drugs the day L.S. was born. M.S., the presumed father (Father),[2] also admitted to a history of drug abuse and knew but failed to stop Mother from using drugs while pregnant with L.S. The Agency filed a dependency petition on behalf of L.S. under section 300, subdivision (b), alleging she suffered or there was a substantial risk she

---

[1]    All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]    Father is not a party to this appeal.

2

would suffer serious physical harm or illness as a result of the parents' failure or inability to adequately protect and provide regular care for her due to their substance abuse.

The Agency interviewed Mother and Father, and both denied having any Native American heritage. The Agency also interviewed A.G. (Maternal Aunt), who was being evaluated for placement of L.S., and G.G. (Maternal Grandmother), but was silent as to whether it asked these relatives about L.S.'s potential Native American heritage. In its response brief, the Agency concedes "[t]here is no record the Agency inquired with relatives concerning [Native American] ancestry during the initial investigation." The Agency filed an ICWA-10 form documenting that it asked Mother and Father about L.S.'s Native American heritage and both gave the Agency no reason to believe L.S. is or may be a Native American child.

Mother attended a portion of the detention hearing in November 2020 by telephone, as it was conducted remotely due to COVID-19 restrictions. Maternal Aunt also appeared telephonically. Mother's counsel informed the juvenile court that "Mother indicates she has no Native American heritage." The Agency informed the court that Father also denied Native American heritage. It requested the court make a finding without prejudice that ICWA did not apply. The court asked if anyone wanted to be heard and hearing no opposition, it found without prejudice that ICWA did not apply. Before adjourning, the court asked Maternal Aunt if she had any questions; none was reported. The court's minute order reflected its ICWA finding, which further stated Mother and Father were ordered to complete and submit to the Agency the ICWA-020 form regarding parental notification of " 'Indian Status' " form. There are no ICWA-020 forms in the record.

3

As the Agency continued to investigate, it asked Father if he had any support and Father provided the Agency with the names of three relatives, including L.S.'s paternal grandmother, paternal aunt, and Father's cousin, along with phone numbers for two of these relatives. The Agency also had ongoing contact with maternal relatives, during which Maternal Grandmother informed the Agency she and her husband (Maternal Grandfather) wanted placement of their grandchildren. The Agency also spoke with S.H. (Maternal Great-Aunt), who was not mentioned in the earlier reports and with whom L.S.'s two siblings were later placed. In its jurisdiction and detention report, the Agency reported no new information regarding ICWA. By this time, L.S. had been placed with Maternal Aunt.

Mother, Father, and Maternal Great-Aunt attended the first setting of the jurisdictional and dispositional hearing in December 2020; ICWA was not discussed. Mother and Father did not appear at the continued jurisdictional and dispositional hearing in January 2021, but Maternal Aunt and Maternal Great-Aunt attended. At that hearing, the presumed father of one of L.S.'s siblings "indicate[d] ICWA may apply" to the sibling. (Some capitalization omitted.) ICWA was not discussed as to L.S. At a subsequent hearing in March 2021, which Maternal Aunt and Maternal Great-Aunt attended, the court confirmed its prior finding that ICWA did not apply.

The contested jurisdictional and dispositional hearing was held in March 2021. Mother, Maternal Aunt and Maternal Great-Aunt attended. The court sustained the petition, declared L.S. a dependent, removed her from parental care, and placed her with Maternal Aunt. The court again found without prejudice that ICWA did not apply.

Mother, Maternal Aunt and Maternal Great-Aunt attended the contested six-month review hearing in November 2021. The Agency

recommended the parent's reunification services be terminated and the court set a section 366.26 hearing to select a permanent plan for L.S. L.S.'s two siblings had been removed from Maternal Great-Aunt's home and placed with Maternal Aunt, who was willing to adopt L.S. and her two siblings. Mother was still struggling with her drug treatment program, and the Agency lost contact with Father who was no longer participating in services. The Agency reported no new information concerning ICWA. The court affirmed its previous finding that ICWA did not apply. Finding it detrimental to L.S. to return her to her parents, the court terminated both parents' reunification services, and set a hearing pursuant to section 366.26.

The contested section 366.26 hearing was held in May 2022. Mother and Maternal Aunt attended the hearing. The Agency recommended the court terminate parental rights and order a plan of adoption for L.S., who remained placed with Maternal Aunt. The Agency informed the court that, if called to testify, Maternal Grandmother and Maternal Aunt would both deny any known Native American heritage. The Agency reported no new information regarding ICWA, including whether it conducted an ICWA inquiry of Maternal Grandmother or Maternal Aunt. Neither were called to testify.

The juvenile court found L.S. was adoptable, terminated parental rights of both Mother and Father, ordered a permanent plan of adoption and designated Maternal Aunt the prospective adoptive parent. Before doing so, the court followed the Agency's recommendation that ICWA did not apply. Asserting this was prejudicial error, Mother timely appealed.

DISCUSSION

Mother asserts the Agency and juvenile court failed to satisfy its duty of inquiry under ICWA and section 224.2 to ask "all known extended family

5

members" whether L.S. is a Native American child. Specifically, Mother contends the Agency made no inquiry of any of Father's extended family members, including paternal grandmother, paternal aunt, and Father's cousin. She contends the Agency failed to ask Maternal Aunt or Maternal Grandmother about L.S.'s ICWA status despite having numerous contacts with them throughout the dependency proceedings. She further contends the Agency's representation to the court they would deny Native American heritage if called to testify, and the court's acceptance of that representation, was not sufficient to satisfy ICWA duties. Further, Mother contends the Agency failed to ask Maternal Grandfather and Maternal Great Aunt.[3]

The Agency concedes it failed to conduct an ICWA inquiry "with *some* of the child's available extended family members" (italics added) and the juvenile court failed to ensure proper ICWA compliance by the Agency. But it argues the error was harmless. The Agency's concession of error is proper, but we disagree the error was harmless. Accordingly, we conditionally reverse and remand for the limited purpose of ensuring compliance with ICWA and section 224.2.

In California dependency proceedings, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a).) The Agency's initial duty of

---

[3] In her opening brief, Mother identifies a "maternal aunt" by the name of S.H. and a "maternal great aunt" by the name of S.G., both with the same first name. Our review of the record reveals one reference to S.G.; at the detention hearing in November 2020, counsel for one of L.S.'s siblings requested that "his great aunt, [S.G.]" be considered for placement. Otherwise, all references in the record to a relative with the first name S. is to Maternal Great-Aunt S.H. We note this potential ambiguity but we need not resolve it to decide this appeal.

inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's *grandparent*, *aunt* or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second *cousin*, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA (italics added)].)

Thus, on Father's side, the Agency should have conducted an inquiry of paternal grandmother, paternal aunt, and Father's cousin.[4, 5] On Mother's side, we agree with Mother the Agency's representation to the juvenile court that Maternal Grandmother and Maternal Aunt would deny Native American heritage, if called to testify, was not sufficient to comply with ICWA and section 224.2. At a minimum, the Agency is required to file a report with a description of its ICWA inquiry of extended family members (Cal. Rules of Court, rule 5.481(a)(5) [Agency must "include in its filings a detailed description of all inquiries . . . and all information received pertaining to the child's Indian status]), and it did not.

---

[4] Father's cousin is L.S.'s cousin once removed.

[5] Mother also argues the Agency failed to contact Father's "other unnamed 'cousins' and a 'family member' " that Father mentioned. The record does not reveal the identity of these individuals and the Agency "is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053.)

7

As for Maternal Grandfather, we note the record on appeal does not shed any light on whether he is L.S.'s biological maternal grandfather. He is referred to as the husband of Maternal Grandmother only but, on appeal, Mother refers to him as her biological father. If true, then the Agency should have sought to conduct an ICWA inquiry of him. (§§ 224.1, subd. (c), 224.2, subd. (b).) As to Mother's identification of a "maternal aunt" by the name of S.H. and a "maternal great aunt" by the name of S.G., we leave it to the Agency to resolve any ambiguity as to the proper relationships (see footnote 3 *ante*) on remand.

Mother further contends the juvenile court did not fulfill its inquiry obligations because it did not ask certain extended family members who had attended several hearings about L.S.'s potential Native American heritage. We agree. Section 224.2, subdivision (c), requires that "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." The court failed to satisfy its independent inquiry duties under section 224.2, subdivision (c), by not asking Maternal Aunt or Maternal Great-Aunt whether they knew, or had reason to know, L.S. was a Native American child and instructing them to inform the court if they later received such information.

Because the Agency and the juvenile court did not satisfy its initial inquiry obligations under ICWA and section 224.2, we conclude substantial evidence does not support the juvenile court's finding that ICWA did not apply. (*In re D.S., supra,* 46 Cal.App.5th at p. 1051.) The Agency argues, though, the error was harmless.

As the Agency acknowledges, there is currently a "statewide debate" among the Courts of Appeal as to the appropriate standard for reviewing courts to apply in determining whether the ICWA error was harmless or prejudicial. (See *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 743–744 [discussing conflicting approaches].) Our high court will be reviewing this issue of the appropriate standard to apply.[6] Meanwhile, this court has adopted the approach articulated in *Benjamin M.* (See *In re Y.M.* (2022) 82 Cal.App.5th 901.)

In *Benjamin M.*, the mother denied Native American heritage but the agency could not locate the minor's father and did not obtain any information about Native American ancestry from the minor's paternal side. (*Benjamin M., supra,* 70 Cal.App.5th at p. 740.) Yet, the agency failed to conduct ICWA inquiries with the father's available brother and sister-in-law. (*Id.* at p. 744.) The appellate court held that, because this "readily obtainable information" from father's two relatives was "likely to bear meaningfully on" the child's Native American status, where the agency had no information about the child's paternal side's ancestry, the error was prejudicial. (*Id.* at pp. 744–745.)

Similarly here, we are unable to conclude from the record before us that the error was not prejudicial under the *Benjamin M.* standard. The Agency

_____

[6] The California Supreme Court granted review in the case of *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted September 21, 2022, S275578. The California Supreme Court has also begun to grant and hold petitions for review in ICWA cases pending consideration and disposition of *In re Dezi*. (See *In re G.A.* (2022) 81 Cal.App.5th 355, review granted and held Oct. 12, 2022, S276056; *In re M.M.* (2022) 81 Cal.App.5th 61, review granted and held Oct. 12, 2022, S276099; *R.T. v. Roberta H.* (July 6, 2022, No. B315541) 2022 Cal.App.Unpub. LEXIS 4231, review granted and held Oct. 12, 2022, S275866.)

had readily obtainable information from many known extended family members on both sides of the family—paternal grandmother, paternal aunt, L.S.'s paternal cousin, both maternal grandparents, Maternal Aunt and Maternal Great-Aunt—and many of these relatives had extensive contacts with the Agency and had provided relevant information regarding L.S.'s family history. But none were asked about L.S.'s potential Native American heritage. Thus the missing information here was readily obtainable because the Agency had contact with these extended family members.

The Agency, however, asserts it is unlikely that any missing information from these extended family members was likely to bear meaningfully upon L.S.'s ICWA status or would have shed meaningful light on the Agency's duty of inquiry, for several reasons. We are not persuaded.

First, the Agency argues that unlike *Benjamin M.* where father was absent throughout the case, both Father and Mother were present in these proceedings and denied Native American ancestry. But both parents' mere denial of Native American ancestry is not enough to satisfy the Agency's "broad duty" to ask known and available extended family members about the child's ICWA status. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554; see 25 U.S.C. 1903(2); see also § 224.1, subd. (c), 224.2, subds. (a)–(b).) A contrary rule would "ignore[ ] the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*In re Y.W.*, at p. 554.)

Second, the Agency argues L.S.'s parents "had connections to family members and presumably could have asked them at any time whether they knew of Native American ancestry in their families." It argues the circumstances here make this case like *In re Y.M.*, *supra*, 82 Cal.App.5th 901, in which this court found harmless error in part because father lived with the

10

paternal grandmother during the case and could have asked her about Native American ancestry.

Although we find *In re Y.M.* factually distinguishable,[7] we reiterate what the *Benjamin M.* court said: "[a] parent challenging ICWA compliance cannot always easily obtain the missing information, even when that missing information is about a parent's possible [Native American] ancestry." (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 743–744.) But more importantly, the Agency's position that L.S.'s parents could have conducted an inquiry of more than half a dozen extended family members on both sides of the family goes too far. "The reason that the federal and state legislative branches have required the ICWA inquiry is that in any case where information about Indian ancestry is unknown, the probability of such ancestry is reasonable enough to require the agency and court to pursue it. Requiring a parent to prove that the missing information would have demonstrated 'reason to believe' would effectively impose a duty on that parent to search for evidence that the Legislature has imposed on only the agency." (*Id.* at p. 743.)

---

7    For example, unlike *In re Y.M.*, Mother did not live with all of these extended family members throughout the proceedings, and having "a connection" with them is not the same as being in "close and regular proximity" as was the circumstance with the father and the paternal grandmother in *In re Y.M.* (*In re Y.M.*, *supra*, 82 Cal.App.5th at p. 917.) The Agency also argues Father had the opportunity to ask paternal grandmother, paternal aunt, and his cousin about L.S.'s Native American ancestry because he identified these extended family members as his support system. But we note that by the six-month review hearing, the Agency had lost contact with Father and he was no longer in services. So there is no indication in the record that Father had any motive to ask the extended family members about Native American ancestry on his side of the family.

We conclude the missing information the extended family members "could have given would likely have shed meaningful light on whether there is reason to believe" L.S. is a Native American child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) " 'Reason to believe' is broadly defined as 'information *suggesting* that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.' (§ 224.2, subd. (e)(1), italics added.)" (*Benjamin M.*, at p. 744.) It does not require "proof of an actual outcome (that the parent may actually have [Native American] heritage)," rather it is "meaningful proof relevant to the determination, whatever the outcome will be." (*Id.* at pp. 743–744.) Here, we reiterate the *Benjamin M.* court's final cautionary word that "a collateral attack on a juvenile court judgment based on later discovered information can wreak havoc on a child's stability if the child turns out to have been [a Native American] child all along," and "[t]hat risk would be greater, and even more unacceptable, if the agency forgoes basic inquiry into potentially meaningful, easily acquirable information." (*Id.* at p. 745.)

We conclude the ICWA error was prejudicial and we therefore conditionally reverse and remand for the limited purpose of ensuring compliance with ICWA and section 224.2. Given the importance of expediency and need for finality, we encourage the parties to stipulate to immediate issuance of the remittitur in this case. (Cal. Rules of Court, rule 8.272(c)(1).)

## DISPOSITION

The May 11, 2022 order terminating Mother's parental rights over L.S. is conditionally reversed and the matter is remanded to the juvenile court with directions that within 30 days of the remittitur the Agency must file a report demonstrating its compliance with the inquiry provisions of ICWA and

section 224.2, subdivision (b), and, if required, conduct further inquiry under section 224.2, subdivision (e). Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine if the Agency's investigation satisfied its affirmative duty to investigate, consistent with section 224.2, subdivision (c).

The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If after completing its inquiries, neither the Agency nor the juvenile court has reason to believe or to know L.S. is a Native American child, the May 11, 2022 order shall be reinstated. Alternatively, if after completing the inquiry, the Agency or the juvenile court has reason to believe or to know L.S. is a Native American child, the juvenile court shall proceed accordingly.

On November 2, 2022, this court stayed the post permanency planning review hearing pending further order of this court. This court hereby orders the stay is lifted.

DO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.

13